```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


PHYLLIS DAHL,                       )
                                    )
                                    )
      Plaintiff,                    )
                                    )
           v.                       )     1:15cv611 (JCC/IDD)
                                    )
AEROSPACE EMPLOYEES'                )
RETIREMENT PLAN OF THE              )
AEROSPACE CORP., et al.             )
                                    )
      Defendants.                   )
```

## M E M O R A N D U M  O P I N I O N

This matter is before the Court on Defendants Julie and Ronald Goetzes' and Defendant Aerospace Employees' Retirement Plan of the Aerospace Corp.'s Motions to Dismiss. [Dkts. 4, 11.] For the following reasons, the Court will grant the motions.

### I. Background

Phyllis Dahl ("Ms. Dahl" or "Plaintiff") is the former spouse of Ronald Goetz ("Mr. Goetz"). (Compl. [Dkt. 1] ¶ 1.) Their marriage was dissolved by the Circuit Court of Fairfax County on August 8, 2013 through a final decree of divorce ("final decree"). (*Id.* ¶ 8.) The final decree ratified and incorporated a written settlement agreement ("settlement agreement") between Ms. Dahl and Mr. Goetz. (*Id.* ¶ 9.)

1

Pursuant to the terms of the settlement agreement, each party had the option to elect the survivor annuity benefit under the other's retirement plan. (*Id.* ¶ 10.) At the time of the settlement agreement, Mr. Goetz was still employed by The Aerospace Corp. and Ms. Dahl was a former employee of The Aerospace Corp. with a vested right to her own pension benefits under the Aerospace Employees' Retirement Plan ("AERP"). (*Id.* ¶ 11.)

Under the AERP, the survivor annuity is paid to the designated survivor after the death of the plan participant. (*Id.* ¶ 12.) Per the terms of the AERP, Ms. Dahl could elect to choose a survivor annuity equal to fifty, seventy-five, or one hundred percent of Mr. Goetz's pension payments. (*Id.* ¶ 15.) To offset the survivor annuity payments, the AERP reduces the amount of pension payments to retirees who designate survivor annuitants. (*Id.* ¶ 13.) In the settlement agreement, Ms. Dahl and Mr. Goetz agreed that the party electing a survivor annuity under the other's plan would compensate the other for the reduction in periodic pension payments. (*Id.* ¶ 14.)

Mr. Goetz retired from The Aerospace Corp. on July 31, 2014. (*Id.* ¶ 21.) He did not tell Ms. Dahl about his plans to retire. (*Id.*) On October 6, 2014, after Ms. Dahl learned of Mr. Goetz's retirement, Ms. Dahl's counsel submitted a draft Qualified Domestic Relations Order ("QDRO") to the AERP for

2

review. (*Id.* ¶ 22.) The draft QRDO stated that Ms. Dahl was to receive a one hundred percent survivor annuity under Mr. Goetz's pension. (*Id.*) Three days later, counsel for AERP wrote Ms. Dahl's counsel advising that the draft QDRO could not operate to assign a survivor annuity to Ms. Dahl, because upon Mr. Goetz's retirement on July 31, 2014 his current wife, Julie Goetz ("Mrs. Goetz") became vested with a fifty percent survivor annuity. (*Id.* ¶ 24.)

Ms. Dahl's counsel wrote to the AERP fiduciaries asking that they reconsider the draft QDRO because Mr. Goetz had hidden his retirement from Ms. Dahl and hidden the survivor annuity provisions of the final decree from the AERP. (*Id.* ¶ 25.) The AERP administrator stated that the draft QRDO had not been submitted to the AERP before the effective date of Mr. Goetz's retirement. (*Id.* ¶ 26.) Because he had elected a fifty percent survivor annuity for Mrs. Goetz and that survivor annuity had irrevocably vested in Mrs. Goetz under both the Employee Retirement Income Security Act ("ERISA") and the AERP, the AERP was powerless to act. (*Id.*) Ms. Dahl appealed the decision. (*Id.* ¶ 27) The appeal was denied. (*Id.* ¶ 28.)

Ms. Dahl filed this suit. In the complaint, she alleges that Mr. Goetz "actively deceived the AERP by advising it in his retirement application that there were no court orders requiring any part of [his] benefit to be paid to any other

3

person." (*Id.* ¶ 32.)  This was "a concealment of material fact in violation of the implied covenant of good faith and fair dealing" inherent in every contract.  (*Id.* ¶ 34.)  She also claims that Mr. Goetz's failure to notify her of his retirement was a concealment of a material fact upon which Ms. Dahl relied to her detriment.  (*Id.* ¶ 33.)  She seeks a declaratory judgment pursuant to 29 U.S.C. § 1132(a)(1)(B) that the designation and recognition of Mrs. Goetz as survivor annuitant under Mr. Goetz's plan is null and void and that she is entitled to elect "by appropriate QDRO" a fifty, seventy-five, or one hundred percent stake in Mr. Goetz's survivor annuity.  (Compl. at 7-8.)  She also seeks an injunction against AERP requiring it to immediately implement any relief granted.  (*Id.* at 8.)  Both Goetzes and AERP move to dismiss.  Both AERP and the Goetzes argue that Ms. Dahl lacks standing to bring this claim or, in the alternative, her claim fails as a matter of law because the survivor annuity has already vested in Mrs. Goetz.  (Goetzes' Mem. in Supp. [Dkt. 5] at 1-2; AERP's Mem. in Supp. [Dkt. 12] at 2, 13.)  Additionally, the Goetzes argue that they are not proper defendants.  (Goetzes' Mem. in Supp. at 1-2.)[1]  Having

---

[1] Relatedly, the Goetzes argue that it is "entirely unclear" as to the purported basis of liability against them.  (Goetzes' Mem. in Supp. at 1.)  They also note that the complaint contains no enumerated counts.  (*Id.*)

4

been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint[.]" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). To survive a motion to dismiss, a plaintiff's complaint must demand more than "an unadorned, the-defendant-unlawfully-harmed-

5

me accusation." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Legal conclusions couched as factual allegations are not sufficient. *Twombly*, 550 U.S. at 555. Hence, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Moreover, the plaintiff does not have to show a likelihood of success on the merits. Rather, the complaint must merely allege - directly or indirectly - each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.

### III. Analysis

All three Defendants argue that the there was no QDRO naming Ms. Dahl as the survivor annuitant before Mr. Goetz retired; as such, the survivor annuity has already vested in Mrs. Goetz. (Goetzes' Mem. in Supp. at 6; AERP's Mem. in Supp. at 7.) Defendants also argue that Ms. Dahl lacks standing to bring this claim. (Goetzes' Mem. in Supp. at 4-5; AERP's Mem. in Supp. at 13-14.) Additionally, the Goetzes claim they are not proper defendants. (Goetzes' Mem. in Supp. at 5-6.) In opposition, Ms. Dahl argues that the fraud/breach of trust exception to the "regulatory imperative" recognized by the Supreme Court in *Free v. Bland* and *Yiatchos v. Yiatchos* is

6

applicable here. (Dahl's Opp. to AERP's Mot. [Dkt. 16] at 4; Dahl's Opp. to Goetzes' Mot. [Dkt. 14] at 11-14.) She also argues that she has standing to bring the claims here and that the Goetzes are necessary parties under Federal Rule of Civil Procedure 19. (Dahl's Opp. to Goetzes' Mot. at 8-10, 15-17.)

  Turning first to the standing argument, an ERISA action may be brought only by a participant or a beneficiary. 29 U.S.C. § 1132(a)(1). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Defendants argue that Ms. Dahl lacks standing to bring this claim because she is neither a participant nor a beneficiary under the statute. (Goetzes' Mem. in Supp. at 4-5; AERP's Mem. in Supp. at 13-14.) But standing to bring an ERISA action does not depend on whether a plaintiff is *actually* entitled to benefits. *Lewis v. Kratos Def. & Sec. Solutions*, 950 F. Supp. 2d 851, 858 (E.D. Va. 2013). In this circuit, it is settled that having a meritorious claim is not a requirement for standing as a participant or beneficiary; rather, the Fourth Circuit has made clear that "[w]hether an employee has standing as a 'participant' [or beneficiary] depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits." *Davis v. Featherstone*, 97 F.3d

7

734, 737 (4th Cir. 1996) (citation and internal quotation marks omitted); *see also Moon v. BWX Techs., Inc.*, 498 F. App'x 268, 273-74 (4th Cir. 2012); *Lewis*, 950 F. Supp. 2d at 858. Importantly, the test for a colorable claim is "not a stringent one," but asks instead if the claim is "arguable and nonfrivolous, whether or not it would succeed on the merits." *Davis*, 97 F.3d at 737-38. Here, the complaint alleges that under the terms of the settlement agreement, Ms. Dahl has the option to select a percentage of the survivor annuitant benefit under Mr. Goetz's retirement plan. (Compl. ¶ 15.) Therefore, the Court finds that Ms. Dahl has an "arguable and nonfrivolous" claim to benefits.

Benefits provided under a pension "plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), except pursuant to "a qualified domestic relations order," 29 U.S.C. § 1056(d)(3)(A). A qualified domestic relations order "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(II). In order to be a qualified domestic relations order, the order must meet several statutory criteria. *See* 29 U.S.C. § 1056(d)(3)(C)-(D). In this case, the question is whether there was a QDRO in place at the time Mr. Goetz retired. Therefore, this case is

8

controlled by *Hopkins v. AT&T Global Information Solutions Co.*, in which the Fourth Circuit held that a domestic relations order was not "qualified" when it was not in effect at the time of the participant's retirement. 105 F.3d 153, 156-57 (4th Cir. 1997).

In *Hopkins*, the plaintiff, Vera Hopkins, and the participant, Paul Hopkins were divorced. *Id.* at 154. Paul was ordered to pay Vera alimony, and Vera obtained a judgment allowing her to attach to Paul's wages. *Id.* After the divorce, Paul married Sherry Hopkins. *Id.* He retired in 1993 and became eligible for pension benefits. *Id.* The pension benefits were paid in the form of a joint and survivor annuity – Paul was to receive a fixed income for life ("pension benefit"), and if his spouse survived him, she would receive fifty percent of that fixed income for the remainder of her life ("surviving spouse benefit"). *Id.* at 154-55. In 1994, Vera obtained a judgment against Paul for past-due alimony. *Id.* No longer able to attach to Paul's wages, she sought and received an order from the state court to collect past-due alimony and current alimony from Paul's pension ("surviving spouse order"). *Id.* She then sued AT&T, Paul's former employer, seeking a declaratory judgment that the surviving spouse order was a QRDO entitling her to the surviving spouse benefit. *Id.* The district court granted summary judgment for AT&T, which the Fourth Circuit upheld. *Id.* After careful review of ERISA, the Fourth Circuit

9

determined that Sherry's interest in the surviving spouse benefit vested in 1993, when Paul retired. *Id.* at 156. Therefore, Vera's surviving spouse order would be a payment against Sherry, a beneficiary. *Id.* "To be qualified, however, a 'domestic relations order' must relate to a benefit 'payable with respect to a participant.'" *Id.* As Sherry was a beneficiary and not a participant, the surviving spouse order was not a QRDO. *Id.*

Here, Mr. Goetz retired on July 31, 2014. (Compl. ¶ 21.) Ms. Dahl does not dispute that there was no QRDO in effect at the time of Mr. Goetz's retirement that detailed her desire to exercise her option for the survivor benefit and what percentage she wished to receive. (*See id.* ¶ 22 ("On October 6, 2014, after Phyllis finally learned [of] Ronald's retirement, Phyllis' counsel submitted a draft Qualified Domestic Relations Order ("QRDO") to the AERP for its review. The draft QRDO contained a provision decreeing that Phyllis was to receive a 100% survivor annuity under Ronald's pension from AERP.").)[2] Consequently, on the date of Mr. Goetz's retirement, the survivor benefit vested in Mrs. Goetz. Because Mrs. Goetz is a

---

[2] Furthermore, the settlement agreement cannot qualify as a QDRO because it contains neither a fixed amount or a percentage of benefits (or, in the alternative, how the percentage or fixed amount is to be determined) and the number of payments or period of time such payments should be made as required by statute. (Compl. ¶ 14.)

10

beneficiary and not a participant, the draft QDRO does not relate to a benefit "payable with respect to a participant." Therefore, Ms. Dahl's claim fails as a matter of law. *See Hopkins*, 105 F.3d at 157; *see also Carmona v. Carmona*, 603 F.3d 1041, 1060 (9th Cir. 2008) ("We hold here only that a state DRO may not create an enforceable interest in surviving spouse benefits to an alternate payee after a participant's retirement, because ordinarily at retirement the surviving spouse's interest irrevocably vests."); *Langston v. Wilson McShane Corp.*, 828 N.W.2d 109, 116-17 (Minn. 2013) (applying *Hopkins* and stating "Because we conclude that a plan participant's surviving spouse benefits vest in a current spouse at the time of a plan participant's retirement, and under ERISA only a QDRO can alienate pension benefits, a pre-existing state law right cannot prevent the vesting of those rights.  To conclude otherwise would undermine ERISA's preemption of state law by causing a DRO, rather than a QDRO, to have some effect on the alienation of benefits under ERISA - a result that ERISA itself clearly prohibits.").

Ms. Dahl concedes that there is no QDRO that would allow her to collect survivor annuitant benefits, but argues instead that Mr. Goetz's election of a survivor annuity for Mrs. Goetz was a void act.  (Dahl's Opp. to Goetzes' Mot. at 7;

11

Dahl's Opp. to AERP's Mot. at 3.)[3] In support, Ms. Dahl cites to *Free v. Bland* and *Yiatchos v. Yiatchos*, two Supreme Court cases which Ms. Dahl claims establish the fraud/breach of trust exception to the "regulatory imperative." (Dahl's Opp. to AERP's Mot. at 4.) Both cases concerned determining survivorship rights in U.S. savings bonds where U.S. Treasury regulations conflicted with state law. *See Yiatchos*, 376 U.S. 306, 307-08 (1964); *Free*, 369 U.S. 663, 664 (1962).

In *Free*, the Supreme Court held that the surviving co-owner of the savings bonds was entitled to the proceeds of the bonds without liability to the beneficiaries of the deceased co-owner, despite conflicting state law purporting to forbid a married couple to make survivorship arrangements with respect to community property and requiring such property to pass as part of the deceased's estate in accordance with his will or the intestacy laws. *Free*, 369 U.S. at 670. In dicta, the Court noted that "[t]he regulations are not intended to be a shield for fraud and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto . . . ." *Id.* at 670. However, "the doctrine of fraud applicable in such a case must be determined on another day, for this issue is not presently here." *Id.* In *Yiatchos*, the

---

[3] Dahl repeats this argument in both oppositions. For ease of citation, the Court will refer to Dahl's opposition to AERP's motion.

12

Supreme Court considered the scope and application of what it deemed the "regulatory imperative" in *Free* – namely, in what circumstances fraud or breach of trust would override the Treasury regulations permitting rights of survivorship in savings bonds. *Yiatchos*, 376 U.S. at 307. The Court remanded the case to develop a factual record as to whether the widow had consented to her husband naming his brother as the surviving co-owner of the bonds.[4]  *Id.* at 313.  "If she gave such consent, or if she ratified the purchase and registration of the bonds, the conduct of the husband was not, for federal purposes, fraud or breach of trust sufficient to avoid the command of the regulations, and [his brother] would be entitled to all of the bonds."  *Id.* at 310.

Notably, both *Free* and *Yiatchos* concerned U.S. Treasury regulations, not interpretation of ERISA.  Ms. Dahl has cited no case law that applies the fraud/breach of trust exception recognized in *Yiatchos* and *Free* to ERISA.  (*See* Dahl's Opp. to AERP's Mot. at 5-7 (citing *In re Novosielski*, 992 A.2d 89, 91 (Pa. 2010) (considering conflict between state law and Treasury regulations in determining ownership of Treasury Direct account); *Towne v. Towne*, 707 S.W.2d 745, 746 (Tx. Ct. App.

---

[4] The case was also remanded for the determination, under state law, whether the widow had an interest in the community's specific assets, or only a half interest in the estate generally.  *Yiatchos*, 376 U.S. at 313.

13

1986) (affirming trial court's imposition of constructive trust on proceeds of a life insurance policy issued by the Veterans Administration); *see also Sun Life Ins. Co. v. Tinsley*, No. 6:06-CV-00010, 2007 WL 1052485, at *6 (W.D. Va. Apr. 4, 2007) (setting aside change of beneficiary designation on life insurance policy governed by ERISA on grounds of undue influence without citation to *Free* or *Yiatchos*))). This Court declines to expand such a doctrine to a different, complex regulatory scheme like ERISA. Additionally, even if the Court were to find that *Free* and *Yiatchos* could be extended to ERISA, Ms. Dahl has cited no case law delineating the scope of the fraud exception. *Yiatchos* remanded the case to develop a factual record on a narrow question. It did not set forth principles that would guide a district court in determining whether there has been a fraud or breach of trust in a different factual scenario.

Ms. Dahl's fraud argument is further frustrated by *Langston v. Wilson McShane Corp.*, a case from the Supreme Court of Minnesota with nearly identical facts. In *Langston*, per the terms of the divorce decree the participant was to designate the plaintiff, his ex-wife, to receive the survivor benefit under his pension plan. *Langston*, 828 N.W.2d at 111. Several years after the divorce and before the plaintiff served a QDRO on the plan, the participant remarried, designated his wife as the survivor beneficiary, and retired. *Id.* at 111-12. The court

14

held that the surviving spouse benefits vested in his current wife at the time of the participant's retirement, even though there was a state court order directing the participant to name his ex-wife as the surviving spouse beneficiary. *Id.* at 116. Though the case did not discuss *Free* or *Yiatchos*, the court rejected the plaintiff's argument that she had a pre-existing right to the surviving spouse benefits under the state court judgment and decree of divorce, which was entered prior to the participant's retirement. *Id.*

Here, as in *Langston*, Mr. Goetz was aware of the divorce decree and settlement agreement when he elected Mrs. Goetz as his survivor annuitant.[5] *Langston*, as persuasive authority, strengthens Defendants' arguments that *Free* and *Yiatchos* do not apply here. Further supporting this conclusion is the fact that, unlike *Langston*, there was no decree here declaring that Ms. Dahl was entitled to a specific percentage of Mr. Goetz's survivor's benefits. Rather, Ms. Dahl had to affirmatively elect to receive such benefits, which in the

---

[5] At oral argument, Plaintiff's counsel argued that Mr. Goetz defrauded the AERP when, on his application for retirement benefits, Mr. Goetz represented that there was no QDRO. The form asked Mr. Goetz to certify that there was no QDRO "*requiring* any part of [his] benefit to be paid to any other person." (Goetzes' Reply [Dkt. 15], Ex. 2 (emphasis added).) Mr. Goetz would not have needed to know the legal distinction between a QDRO and a DRO to answer that question truthfully, as the settlement agreement on its face did not require that Mr. Goetz pay Ms. Dahl a part of his benefit.

15

eleven years since her divorce became final she did not do. Therefore, since there was no QDRO establishing Ms. Dahl's right to survivor benefits at the time Mr. Goetz retired, the surviving spouse benefit irrevocably vested in Mrs. Goetz as of the date of Mr. Goetz's retirement.[6]

### IV. Conclusion

For the foregoing reasons, the Court will grant the motions and dismiss the case.  Should Defendants wish to seek an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), they are directed to file a separate motion detailing the factual and legal support for such an award.  An appropriate order will issue.

|  |  |
|---|---|
| | /s/ |
| August 13, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[6] In light of this holding, the Court does not need to address whether the Goetzes are proper defendants in this action.