```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


PHYLLIS DAHL,                      )
                                   )
                                   )
     Plaintiff,                    )
                                   )
          v.                       )    1:15cv611 (JCC/IDD)
                                   )
AEROSPACE EMPLOYEES'               )
RETIREMENT PLAN OF THE             )
AEROSPACE CORP., et al.            )
                                   )
     Defendants.                   )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Phyllis Dahl's ("Dahl") Motion to Reconsider an August 13, 2015 order dismissing this case for failure to state a claim upon which relief can be granted. [Dkt. 28.] For the following reasons, the Court will deny the motion.

### **I. Background**

This case arose from an August 2003 final decree of divorce between Dahl and Defendant Ronald Goetz ("Goetz"). (Compl. [Dkt. 1] ¶¶ 8-9.) A Virginia court incorporated Dahl and Goetz's divorce settlement agreement, which gave Dahl the option to elect a fifty, seventy-five, or one hundred percent survivor annuity benefit under Goetz's pension plan. (*Id.* ¶ 14.) Goetz was a participant in the Aerospace Employees'

1

Retirement Plan ("AERP") through his employer, The Aerospace Corporation. (*Id.* ¶ 11.) AERP permits a plan participant to designate a beneficiary to receive a survivor annuity after the participant has died. (*Id.* ¶ 12.)

Goetz continued to work for The Aerospace Corporation for eleven years after the divorce, during which time he remarried. Over those eleven years, Dahl did not inform AERP of her divorce settlement nor did she elect beneficiary status. (*Id.* ¶ 26.) When Goetz retired on July 31, 2014, Dahl still had not elected the survivor benefits. (*Id.* ¶ 22.) Goetz gave Dahl no notice of his intent to retire. (*Id.* ¶ 21.) Furthermore, Goetz did not inform AERP of the divorce settlement and affirmatively marked on his retirement application that there were no court orders requiring his benefits to be paid to another person. (*Id.* ¶¶ 30-32.) Instead, Goetz designated his current wife as his survivor beneficiary.

In October 2014, after learning of Goetz's retirement, Dahl submitted a "draft Qualified Domestic Relations Order" to AERP for its review. (*Id.* ¶ 22.) AERP would not recognize the draft order, however, because the survivor annuity vested in Goetz's current wife at the time of Goetz's retirement. (*Id.* ¶¶ 24-28.) After appealing AERP's decision to the plan administrator, Dahl filed this suit seeking to void Goetz's designation of his current wife as his beneficiary, among other

relief. (*Id.* at 6-7.) As defendants, Dahl named Goetz, his current wife, and the Aerospace Employees' Retirement Plan of The Aerospace Corporation (collectively "Defendants").

On August 13, 2015, the Court issued a Memorandum Opinion granting Defendants' motion to dismiss Dahl's complaint for failure to state a claim. (Mem. Op. at 16.) Like AERP, this Court found that Dahl did not have a Qualifying Domestic Relations Order ("QDRO") at the time of Goetz's retirement. (*Id.* at 10.) Thus, under Forth Circuit law, the benefits vested in Goetz's current wife at that time. (*Id.* at 10-11.) Additionally, the Court rejected Dahl's argument that the Supreme Court cases of *Yiatchos v. Yiatchos*, 376 U.S. 306 (1964) and *Free v. Bland*, 369 U.S. 663 (1962), should apply to void Goetz's beneficiary designation as an act of fraud or breach of good faith. (Mem. Op. at 11-15.)

In *Yiatchos*, the Supreme Court applied a doctrine that it first recognized in *Free*, namely that a federal regulatory scheme's preemption of state law should "not be used as a shield for fraud or to prevent relief 'where the circumstances manifest fraud or a breach of trust tantamount thereto.'"[1] *Yiatchos*, 376 U.S. at 308 (quoting *Free*, 369 U.S. at 670). The statutory scheme at issue in *Yiatchos* was a federal treasury regulation

---

[1] For simplicity, the Court will refer to this doctrine as the *Yiatchos* doctrine.

declaring the beneficiary named on a savings bond the "sole and absolute owner" of the bond after the purchaser's death. *Id*. The purchaser in *Yiatchos*, however, used community property to buy the bonds. Thus, under state law, the purchaser's wife would have had a claim to at least some of the bonds. The Supreme Court expressed concern that the federal regulation's preemption of the state communal property law would shield a potential fraudulent use of community property. Thus, the Supreme Court remanded to state court to determine whether the purchaser's use of community property was tantamount to fraud under federal law. *Id.* at 309-13. Despite Dahl's urging, this Court declined to apply the *Yiatchos* doctrine to the QDRO process when dismissing this case.

Dahl filed a motion to alter or amend the Court's judgment on the limited argument that the Court erroneously declined to void Goetz's beneficiary designation as the product of fraud or breach of trust.[2] (Pl.'s Mem. in Supp. [Dkt. 28].) Defendants filed memoranda in opposition to this motion, (Goetz's Mem. in Opp. [Dkt. 32]; AERP's Mem. in Opp. [Dkt. 33]), to which Dahl replied, (Pl.'s Reply Mem. [Dkt. 35]). Dahl waived a hearing on this motion. Thus, the matter is ripe for disposition.

---

[2] Dahl does not challenge the Court's prior finding that her domestic relations order was not a QDRO within the meaning of ERISA, 29 U.S.C. § 1056(d)(3)(B).

4

**II. Legal Standard**

Federal Rule of Civil Procedure 59(e) governs this motion to reconsider. A court may amend a judgment under Rule 59(e) in the following three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Amending a judgment "is an extraordinary remedy that should be applied sparingly." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). A reconsideration motion "is inappropriate if it asks the court to 'reevaluate the basis upon which it made a prior ruling' or 'merely seeks to reargue a previous claim.'" *Projects Mgmt. Co. v. DynCorp Int'l, LLC*, 17 F. Supp. 3d 539, 541 (E.D. Va. 2014) (quoting *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997)).

**III. Analysis**

Dahl argues that three sentences in the prior opinion were incorrect and led the Court to erroneously reject the application of the *Yiatchos* doctrine as a means of voiding Goetz's beneficiary designation. Dahl perceived errors in the following: (1) the opinion states that Dahl cited no cases applying the *Yiatchos* doctrine to an ERISA, (Pl.'s Mem. in Supp. at 1-3); (2) the opinion found no principles in *Yiatchos* to

5

guide a district court's fraud or breach of trust analysis, (*id.* at 6-8); and (3) the opinion implies in a footnote that Goetz did not engage in fraud or breach of trust by failing to disclose the divorce settlement to AERP, (*id.* at 4-6). Furthermore, Dahl's reply memorandum argues that these perceived errors result from "a misapprehension of the evidence and the Complaint, and result[] in manifest injustice." (Pl.'s Reply Mem. at 3-4.) Addressing these arguments in turn, the Court finds no error in its prior decision and denies Dahl's motion to reconsider.

A.     The Court's Consideration of Dahl's Cited Cases

Dahl argues that the dismissal of her case was "premised on the mistaken conclusion that 'Ms. Dahl has cited no case law that applies the fraud/breach of trust exception recognized in *Yiatchos* and *Free* to ERISA.'" (Pl.'s Mem. in Supp. at 1 (quoting Mem. Op. at 13).) Dahl's memorandum at the motion to dismiss stage cited *Sun Life Insurance Co. v. Tinsley*, which applied the federal common law of undue influence to set aside an ERISA life insurance beneficiary designation. *Sun Life*, No. 6:06-cv-00010, 2007 WL 1052485, at *6 (W.D. Va. Apr. 4, 2007). For several reasons, *Sun Life* does not demonstrate clear error in the Court's prior decision.

The Court considered *Sun Life* when evaluating Dahl's argument at the motion-to-dismiss stage. This Court's

6

memorandum opinion cited and accurately summarized *Sun Life*'s holding in a parenthetical. (*See* Mem. Op. at 14.) In light of the Court's actual reference to *Sun Life*, Dahl can make no credible argument that the Court overlooked that case. Dahl's argument, therefore, must be that the Court misunderstood the significance of *Sun Life* by concluding that the case did not apply the *Yiatchos* doctrine to ERISA.

The Court did not misunderstand the significance of *Sun Life*. Even Dahl admits that *Sun Life* never purported to rely on *Yiatchos* or *Free* as the basis of its decision. (*See* Pl.'s Reply at 2 ("The *Sun Life* Court did not use the words 'Free' or 'Yiatchos,' yet nonetheless set aside an ERISA beneficiary designation as a product of fraud."). *Sun Life* never cited either of those opinions nor referenced the necessity to avoid any "regulatory imperative." Thus, the *Sun Life* court clearly had a different rationale for setting aside a life insurance beneficiary designation for undue influence. That rationale was ERISA's "silen[ce] on the matter of which party shall be deemed beneficiary among disputing claimants." *Sun Life,* 2007 WL 1052485, at *2 (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 562 (4th Cir. 1994)). To fill this gap within ERISA, the *Sun Life* court abruptly resorted to federal common law principles of undue influence to decide whether to set aside a beneficiary designation. *Id.* Relying on

7

federal common law developed by the Sixth Circuit, the court concluded that the plan participant's beneficiary designation was "ineffective" because it was made under the undue influence of the beneficiary. *Id.* at \*6. Dahl attempts to shoehorn this case into the *Yiatchos* doctrine by arguing that "[w]hether expressly stated or not, the avoidance of beneficiary designations tainted by fraud is the *Free* and *Yiatchos* Doctrine." (Pl.'s Reply at 2.) Under this view, Dahl believes *Sun Life* applied *Yiatchos* to ERISA, making this Court's statement that Dahl cited no such case error.

Regardless of whether *Sun Life* unknowingly conjured the spirit of *Yiatchos* when applying federal common law to set aside a beneficiary designation, it was not error for this Court to decline to do the same. Like the *Sun Life* court, this Court has the power to "fill in the interstices of ERISA" with federal common law. *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992). Despite that power, "we must respect the fact that Congress in creating ERISA has 'established an extensive regulatory network and has expressly announced its intention to occupy the field.'" *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 992 (4th Cir. 1990) (quoting *U.S. Steel Mining Co. v. District 17*, 897 F.2d 149, 153 (4th Cir. 1990)). "Importantly, courts must be conscientious to fashion federal common law only when it is 'necessary to effectuate the purposes

8

of ERISA.'" *Singer*, 964 F.2d at 1452 (quoting *Provident Life*, 906 F.2d at 992). Courts applying these principles have reached conflicting conclusions about the soundness of creating federal common law to fill ERISA's statutory gaps. *See, e.g.*, *Provident Life*, 906 F.2d at 992-93 (citing cases disagreeing about the application of federal common law of unjust enrichment to ERISA); *Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 622 (11th Cir. 1992) (citing cases disagreeing about creation of a federal common law cause of action against ERISA plan administrator for fraudulent misrepresentation). For the following reasons, none of the cases Dahl cites convince this Court that creating a fraud or breach of trust exception to Goetz's pension plan beneficiary designation is necessary to effectuate the purposes of ERISA.

First, applying federal common law fraud in this case would likely conflict with ERISA's antialienation provision. "[R]esort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA . . . ." *Singer*, 964 F.2d at 1452. "ERISA is an intricate, comprehensive statute," which governs both pension and welfare plans. *Boggs v. Boggs*, 520 U.S. 833, 841 (1997). Within its regulation of pension plans, ERISA explicitly prohibits plan participants from assigning benefits to other people. 29 U.S.C. § 1056(d)(1) ("Each plan shall provide that

9

benefits provided under the plan may not be assigned or alienated."). This prohibition "is mandatory and contains only two exceptions, which are not subject to judicial expansion." *Boggs*, 520 U.S. at 851 (citing §§ 1056(d)(2), (d)(3)(A)). One of those exceptions is the QDRO, which Dahl claims entitles her to plan benefits. A state court order, however, only avoids the prohibition on assigning plan benefits if the order meets statutory requirements to qualify as a QDRO. *See* §§ 1056(d)(3)(C)-(E) (listing requirements); *Boggs*, 520 U.S. at 846 ("A domestic relations order must meet certain requirements to qualify as a QDRO." (internal citations omitted)).

It is uncontested in this motion that Dahl's domestic relations order was not a QDRO when Goetz retired. Dahl argues that she would have submitted a valid QDRO if it were not for Goetz's fraud. To entertain this argument, the Court would have to expand the concept of a QDRO to grant Dahl rights to plan benefits where no actual QDRO existed. Faced with a similar request, the Minnesota Supreme Court found that allowing a non-QDRO state law right to divest a beneficiary designation would "undermine ERISA's preemption of state law by causing a [domestic relations order], rather than a QDRO, to have some effect on the alienation of benefits under ERISA—a result that ERISA itself clearly prohibits." *Langston v. Wilson McShane Corp.*, 828 N.W.2d 109, 117 (Minn. 2013). Without knowledge that

any other court has expanded the definition of a QDRO in the way Dahl proposes, it was not error for this Court to decline to pioneer that path.  *See Boggs*, 520 U.S. at 851 (describing the QDRO exception as "not subject to judicial expansion").

Additionally, injecting a fraud analysis into the pension plan beneficiary designation process would create uncertainty in pension plan administration.  The Supreme Court, in *Kennedy v. Plan Administrator for DuPont Savings & Investment*, emphasized the importance of certainty in ERISA beneficiary designations.  555 U.S. 285 (2009).  There, the Supreme Court declined to adopt a rule "that might blur the bright-line requirement to follow plan documents in distributing benefits."  *Id.* at 303.  Currently, the statutory QDRO requirements give a plan administrator "specific and objective criteria" to consider, akin to a "statutory checklist."  *Id.* at 301-02.  If this Court were to require plan administrators to also consider the absence of fraud in beneficiary designation, that could force administrators to make "factually complex and subjective determinations" that *Kennedy* expressly sought to avoid.  *Id.* at 302.

Lastly, recognizing alleged fraud to void Goetz's designation here would violate the terms of the AERP benefit plan.  "[R]esort to federal common law generally is inappropriate when its application would . . . discourage

11

employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan." *Singer*, 964 F.2d at 1452. AERP does not provide any form of benefit that requires the recalculation of an annuity after benefit payments have commenced. (*See* AERP Mem. in Supp. Mot to Dismiss [Dkt. 12] at 12; AERP Section 4.4 [Dkt. 12-1] at 1-4.) If the Court invokes federal common law to void the beneficiary designation here, the plan would necessarily be required to recalculate the annuity payments. This would conflict with the plan terms and burden the plan administrator.

The factually distinguishable case of *Sun Life* does not rebut these reasons for declining to apply an exception to the QDRO statute. The *Sun Life* court did not have to consider the importance of the explicit QDRO statutory requirements or ERISA's prohibition on assigning pension plan benefits. These issues did not arise in *Sun Life* because that case involved life insurance benefits, *see Sun Life*, 2007 WL 1052485, at *1, whereas "ERISA's anti-alienation provision applies only to pension plans." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 419-20 (6th Cir. 1997); *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836 (1988) ("Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. Congress did not enact a similar

12

provision applicable to ERISA *welfare* benefit plans . . . ."); *Manning v. Hayes*, 212 F.3d 866, 873 (5th Cir. 2000) ("Both ERISA § 1055 and ERISA § 1056 are facially limited in application to pension plans, and neither section purports to have any application with respect to competing claims to benefits under a non-pension employee welfare plans [sic], such as [a] life insurance policy."). Thus, *Sun Life* only serves as evidence that a federal court may apply federal common law to fill the interstices of ERISA when appropriate, something this Court never disbelieved. *Sun Life* does not, however, compel this Court to conclude that it would be appropriate to do so in this pension plan case. Dahl's disagreement with the Court's interpretation of *Sun Life* and *Yiatchos* does not justify reconsideration under Rule 59(e). *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993) ("While plaintiffs disagreed with how the district court applied the *Christianburg* standard, mere disagreement does not support a rule 59(e) motion.").

Similarly, Dahl's citations to cases applying the *Yiatchos* doctrine to statutory or regulatory schemes other than federal treasury regulations do not convince this Court to apply that exception here. Those cases provide support that *Yiatchos* has application outside of the regulatory scheme that prompted its creation. Those cases do not, however, lead to the conclusion that this Court should be the first to apply the

13

doctrine to an ERISA pension plan beneficiary designation. Therefore, the Court denies Dahl's motion to reconsider on this basis. Dahl's next complaint of error is also unconvincing.

B. <u>The Court's Decision Not to Find Fraud in Goetz's Designation of Julie Goetz as His Survivor Annuitant</u>

Dahl's next basis for reconsideration is a footnote in the Court's prior opinion stating that Goetz was truthful when he marked on his retirement benefits application that there was no QDRO "*requiring* any part of [his] benefit to be paid to any other person." (Mem. Op. at 15 n.5.) Dahl argues that the Court's statement reflects a "mistake of law, misapprehension of the evidence and the Complaint, and results in manifest injustice" because, even if technically truthful, Goetz's conduct was itself "fraud and a breach of trust." (Pl.'S Reply Mem. at 3-4.) The Court finds no reason to reconsider its prior opinion on this basis.

First, Dahl's argument that this footnote demonstrates a clear error of law is mooted by the above discussion. The decision above reaffirms why the Court will not apply federal common law of fraud or the *Yiatchos* doctrine to the QDRO exception to the pension plan antialienation provision. Having reached that conclusion, there can be no clear error in finding that Goetz's conduct does not void his beneficiary designation.

14

Second, contrary to Dahl's argument, there is no manifest injustice in this outcome.[3] The "manifest injustice standard presents [parties] with a high hurdle." *In re Yankah*, 514 B.R. 159, 166 (E.D. Va. 2014) (quoting *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010). That hurdle is not surpassed by permitting Goetz's current wife to remain the beneficiary of his pension plan survivor annuity. Dahl had eleven years to elect beneficiary status or put the plan administrator on notice of her option to elect. For eleven years she failed to do either. As the Minnesota Supreme Court concluded in a case with similar facts, former spouses "must act with diligence to preserve their state-law rights in accordance with ERISA's statutory scheme." *Langston v. Wilson McShane Corp.*, 828 N.W.2d 109, 117 (Minn. 2013).

Third, the Court finds no misapprehension of the evidence or the Complaint. The Court has considered Dahl's argument that Goetz's designation of his current wife as a survivor annuitant was an independent act of fraud or breach of

---

[3] Dahl raised arguments of manifest injustice for the first time in her reply brief. (*See* Pl.'s Reply Mem. at 3-4.) The Court is free to reject arguments raised for the first time in a reply brief. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012) ("It would be manifestly unjust and would undermine the integrity of the judicial process if the Court were to consider these new arguments because they were presented knowing that [Defendants] had no opportunity to respond."). This procedural impropriety provides an independent reason for the Court's denial of the motion to reconsider on this basis.

15

trust, in addition to Dahl's other arguments. Dahl appears to disagree with the Court's resolution of these issues. Mere disagreement with the Court's conclusion, however, does not demonstrate any misapprehension of the facts or complaint.

C.     <u>The Court's Statement that the Scope of a Fraud Exception Is Not Defined</u>

As a third perceived error, Dahl argues that the Court wrongly concluded that *Yiatchos* "did not set forth principles that would guide a district court in determining whether there has been a fraud or breach of trust in a different factual scenario." (Pl.'s Mem. in Supp. at 14.) When considering whether fraud was present, the *Yiatchos* Court said it would apply "federal standards . . . guided by state law." 376 U.S. at 309. Similarly, in *Sun Life*, the court looked to federal common law adapted from the law of six states. 2007 WL 1052485, at *3. This Court has expressed at length in this opinion why it will not apply a similar fraud exception to ERISA's pension plan antialienation provision and QDRO process. Therefore, any perceived error in the Court's prior statement regarding lack of guidance is moot. In other words, although the Court has the authority to create federal common law, the Court does not find sufficient reason to invoke that power here.

16

## IV. Conclusion

For the foregoing reasons, the Court finds that reconsideration is not warranted.  Therefore, the Court will deny Dahl's motion.  An appropriate order will issue.

|  |  |
|---|---|
| October 29, 2015<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |