IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHYLLIS DAHL,                         )
                                      )
                                      )
     Plaintiff,                       )
                                      )
          v.                          )     1:15cv611 (JCC/IDD)
                                      )
AEROSPACE EMPLOYEES'                  )
RETIREMENT PLAN OF THE                )
AEROSPACE CORP., *et al*.             )
                                      )
     Defendants.                      )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Motions for
Attorneys' Fees from Defendants Ronald S. Goetz and Julie
Goetz's ("Goetz Defendants") [Dkt. 23], and Defendant Aerospace
Employees' Retirement Plan [Dkt. 25] (collectively
"Defendants").  Plaintiff Phyllis Dahl responded to these
motions and Defendants waived oral argument.  For the following
reasons, the Court will deny the motions.

### I. Background

The Court's two prior memorandum opinions describe the
procedural and factual history of this case at length.  Those
facts are presumed known and recounted here only to the extent
necessary for the present motions.

1

Plaintiff Phyllis Dahl ("Dahl") is the former spouse of Defendant Ronald Goetz ("Mr. Goetz").  When they divorced in 2003, a Virginia court incorporated a written settlement agreement between Dahl and Mr. Goetz.  The agreement gave Dahl the option to elect a fifty, seventy-five, or one hundred percent survivor annuity benefit under Mr. Goetz's retirement plan maintained by Defendant Aerospace Employees' Retirement Plan ("AERP").

Mr. Goetz retired eleven years later, without notifying Dahl.  By that time, Dahl had not informed AERP of her option to elect a survivor annuity payment.  After learning of Mr. Goetz's retirement, Dahl sought to exercise her benefits option by submitting a draft Qualified Domestic Relations Order ("QDRO") to AERP.  AERP would not recognize the draft QDRO, however, because Mr. Goetz's survivor annuity vested in his current wife, Mrs. Goetz, at the time of his retirement.

After pursuing an administrative appeal to AERP, Dahl filed suit in this Court seeking, in relevant part, injunctive and declaratory relief voiding Mr. Goetz's beneficiary designation as the product of fraud or bad faith and permitting Dahl to exercise her option to elect survivor annuity benefits. Dahl's argument for relief hinged on extending the *Yiatchos* Doctrine to ERISA and the QDRO process.  This Doctrine arose from *Free v. Bland*, 369 U.S. 663 (1962) and *Yiatchos v.*

2

*Yiatchos*, 376 U.S. 306 (1964), in which the Supreme Court said that a federal regulatory scheme's preemption of state law should "not be used as a shield for fraud or to prevent relief 'where the circumstances manifest fraud or a breach of trust tantamount thereto.'"  *Yiatchos*, 376 U.S. at 308 (quoting *Free*, 369 U.S. at 670).

Defendants separately moved to dismiss Dahl's case. After briefing and oral argument, this Court applied clear Fourth Circuit precedent to conclude that the survivor benefit vested in Mrs. Goetz when Mr. Goetz retired.  (Mem. Op. [Dkt. 21] at 10 (applying *Hopkins v. AT&T Global Info. Solutions Co.*, 105 F.3d 153 (4th Cir. 1997).)  Furthermore, the Court found the *Yiatchos* Doctrine was inapplicable to this ERISA case, noting that *Yiatchos* developed in a different regulatory context and has not clearly been applied to an ERISA case like Dahl's.  (*Id.* at 11-16.)[1]

After the Court granted the motion to Dismiss, the Goetz Defendants and AERP filed separate motions for attorneys' fees.  (Goetz Mot. [Dkt. 23]; AERP Mot. [Dkt. 25].)  Dahl filed briefs in opposition to these motions.  (Dahl Opp'n to Goetz Mot. [Dkt. 29]; Dahl Opp'n to AERP Mot. [Dkt. 30].)  Thereafter,

---

[1]     The Court elaborated on the inapplicability of the *Yiatchos* Doctrine in its Memorandum Opinion denying Dahl's motion to alter or amend the judgment.  (*See* Mem. Opp. [Dkt. 37].)

Defendants waived oral argument, making these motions ripe for disposition.

While the motions for attorneys' fees were before the Court, Dhal motioned for reconsideration of the dismissal of her case.  (Pl.'s Mem. in Supp. [Dkt. 28]; Pl.'s Reply Mem. [Dkt. 35].)  The Court denied the motion to reconsider in a written memorandum opinion and accompanying order.  (Mem. Opp. [Dkt. 37].)  Thereafter, Dahl noticed an appeal to the Fourth Circuit.

## II. Legal Standard

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved 'some degree of success on the merits.'"  *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242 (2010)).[2] Courts in this Circuit employ a three-step framework for assessing fee requests in ERISA cases.  *See, e.g.*, *Bd. of Trs. for the Hampton Roads Shipping Ass'n-Int'l Longshoremen's Ass'n*

---

[2]     The statutory grant of discretion to award attorneys' fees reads as follows: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The exclusion in "paragraph (2)" relates to a plan fiduciary pursuing claims for delinquent contributions, which is not implicated in the present case.  *See id.* § 1132(g)(2) (cross-referencing § 1145's delinquent contribution enforcement provision).

*v. Ransone-Gunnell*, 781 F. Supp. 2d 286, 290 (E.D. Va. 2011).

First, the motioning party must have achieved "some degree of

success on the merits." *Williams*, 609 F.3d at 634.  Second, the

court exercises its discretion to determine whether the moving

party "should be awarded attorneys' fees." *Id.* at 635.  Lastly,

if fees are deemed appropriate, the court considers the

reasonableness of the fees requested.  *See Ransone-Gunnell*, 781

F. Supp. 2d at 291.  Defendants' motions fail at the second step

of this analysis.  Therefore, the Court does not reach the

reasonableness factor.

### III. Analysis

A.        Jurisdiction

          As a threshold matter, this Court retains jurisdiction

over these pending motions for attorneys' fees even though Dahl

noticed an appeal of the underlying motions to dismiss and

reconsider.  Ordinarily, a notice of appeal divests a district

court of jurisdiction over a case.  *See Marrese v. Am. Academy

of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general,

filing of a notice of appeal confers jurisdiction on the court

of appeals and divests the district court of control over those

aspects of the case involved in the appeal.")  An exception to

this rule exists, however, to permit district courts to resolve

issues collateral to the main cause of action.  *Doe v. Public

Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("We have recognized

limited exceptions to the general rule that permit district
courts to take subsequent action on matters that are collateral
to the appeal . . . .").  This collateral-issue exception
applies to motions for attorneys' fees.  *See Langham-Hill
Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1331 (4th Cir.
1987) (applying exception to motion for fees under Federal Rule
of Civil Procedure 11); *Carr v. Super 8 Motel Developers, Inc.*,
964 F. Supp. 1046, 1047 n.2 (E.D. Va. 1997) (applying exception
to 42 U.S.C. § 1988 fees motion).  The present motions for
attorneys' fees are collateral to the merits of this ERISA case,
making jurisdiction proper before this Court.

B.        Step 1: Degree of Success on the Merits

          All Defendants satisfy the first step of the
attorneys' fees analysis because they each achieved some degree
of success on the merits.  *See Hardt v. Reliance Standard Life
Ins. Co.*, 560 U.S. 242, 255 (2010) ("[A] court in its discretion
may award fees and costs to either party, as long as the fee
claimant has achieved some degree of success on the merits."
(internal citation and quotation omitted)).  The "some degree of
success" standard is satisfied when "the court can fairly call
the outcome of the litigation some success on the merits without
conducting a 'lengthy inquir[y] into the question whether a
particular party's success was 'substantial' or occurred on a
central issue.'"  *Id.*  It requires no lengthy inquiry to

conclude that all Defendants succeeded on central issues through their motions to dismiss.

The Goetz Defendants sought to dismiss this case so Mrs. Goetz could retain her vested benefits.  They raised several arguments in pursuit of that goal, including the absence of a valid QDRO and the inapplicability of the *Yiatchos* Doctrine.  (Goetz Mem. in Supp. [Dkt. 5] at 5; Goetz Reply [Dkt. 15] at 4-7.)  The Court agreed with the Goetz Defendants, thereby permitting Mrs. Goetz to retain her benefits.  Thus, the Goetz Defendants succeeded on the merits and are eligible for attorneys' fees.

Similarly, AERP sought to maintain the current beneficiary designation in order to prevent reannuitization of vested benefits.  To accomplish this, AERP argued that ERISA precluded AERP from assigning benefits to Dahl (AERP Mem. in Supp. [Dkt. 12] at 6-13), and that the *Yiatchos* Doctrine did not apply (AERP Reply [Dkt. 19] at 8-9).  The Court agreed with AERP.  Therefore, AERP, like the Goetz Defendants, achieved some degree of success on the merits and is eligible to receive attorneys' fees.  The next step is to determine whether fees are appropriate.

C.      Step 2: Appropriateness of Award of Attorneys' Fees

District courts have discretion to award attorneys' fees to an eligible party.  *Williams*, 609 F.3d at 635.  In the

Fourth Circuit, five factors provide "general guidelines" to inform the court's exercise of discretion. *Id.* Those factors are (1) degree of opposing party's culpability or bad faith; (2) ability of opposing party to satisfy an award of fees; (3) the award's deterrence of other persons acting under similar circumstances; (4) "whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;" and (5) the relative merit of the parties' positions. *Id.* (quoting *Quesinberry v. Life Ins. Co. of N.A.*, 987 F.2d 1017, 1029 (4th Cir. 1993)). The Court considers these factors independent of the first step in the fee analysis, as being eligible for attorneys' fees does not create a presumption in favor of fees. *Id.*

The Court will apply those factors to each defendant in turn.

### 1. *The Goetz Defendants*

Applying the *Quesinberry* factors to the Goetz Defendants, the Court declines to award attorneys' fees. Three of the five factors weigh against an award of attorneys' fees: the lack of (1) bad faith; (2) a positive deterrent effect; and (3) a benefit to plan participants.

The Court first turns to the bad-faith factor. Bad faith may be "evidenced by an intentional advancement of a

8

baseless contention . . . made for ulterior purposes," *Childers v. MedStar Health, Inc.*, 289 F. Supp. 2d 714, 718 (D. Md. 2003), but "mere negligence or error does not constitute bad faith," *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995).

The Goetz Defendants argue that Dahl exhibited bad faith by pursuing a lawsuit that lacked any legal or factual basis.  Specifically, they argue that under Fourth Circuit precedent Dahl did not submit a QDRO and there was no legal or factual support for a finding of fraud.  The Court, however, finds that Dahl's acts did not rise to the level of bad faith.

Dahl's primary argument throughout this case was not that she submitted a QDRO, but that the *Yiatchos* Doctrine should extend to the QDRO process.  Although this Court ultimately found that argument unavailing, the Court considers Dahl's argument as a good faith attempt to extend the law.  Dahl supported her argument with citations to persuasive authority and pursued reasonable, albeit unavailing, attempts to distinguish Defendants' supporting case law.  Though ultimately unsuccessful, this argument to extend the law did not exceed the bounds of zealous advocacy.

Turning to the deterrence factor, a fee award in this case would not create any positive deterrent effect.  Deterrence may counsel in favor of fees when those fees would discourage

9

"other counsel from pursuing cases that are frivolous, unreasonable, and without foundation." *Childers*, 289 F. Supp. at 719.  When a claim arises from novel facts or legal theories, however, a fee award would have little deterrent effect because similar suits are unlikely.  *See Matlock v. Pitney-Bowes, Inc.*, 811 F. Supp. 2d 1186, 1191 (M.D.N.C. 2011) (finding little deterrent effect of award because "facts of this case are very unusual").

Fees would provide only a minimal positive deterrent effect here because the legal theories presented are not likely to arise again.  Courts can resolve the typical ERISA benefit dispute between ex-spouses with clear Fourth Circuit precedent.  Dahl's argument for the application of the *Yiatchos* Doctrine, however, appears novel without being frivolous or foundationless.  As this case is currently on appeal, the Fourth Circuit may have the opportunity to opine on the *Yiatchos* Doctrine's application to ERISA and a QDRO.  That potential guidance from the Fourth Circuit, in addition to this Court's memorandum opinion, will communicate far more to future litigants than an award of attorneys' fees.  If the Fourth Circuit agrees with this Court, future attempts to rely on the *Yiatchos* doctrine are very unlikely.  Thus, any foreseeable positive deterrent effect would be very minimal or nonexistent.

At the same time, the Court is concerned about the negative deterrent effects an award in this case may have.  When applying the deterrence factor, "the Court may also consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts."  *Ashley v. Prudential Ins. Co. of Am.*, No. 3:10cv518-DWD, 2011 WL 2688977, at *5 (E.D. Va. July 11, 2011) (quoting *Quesinberry*, 987 F.2d at 1029).  An award in this case may threaten the goal of access to federal courts by discouraging plaintiffs with valid, but untested, claims from pursuing a potential remedy.  In such cases, it is appropriate to give the deterrence factor "the greatest emphasis and deference."  *Id.* at *6.  Therefore, this factor weighs heavily against awarding fees in this case.

The Goetz Defendants also did not seek to benefit all plan participants or to resolve a significant legal question regarding ERISA itself.  The Goetz Defendants defended this case to retain the benefits that Mr. Goetz designated to his current wife.  This goal is not ignoble, but it is not aimed at benefitting all plan participants.  *See Metro. Life Ins. Co. v. Leich-Brannan*, 812 F. Supp. 2d 729, 739 (E.D. Va. 2011) (factor not weighing in favor of fee because party "sought only to protect himself, his sister, and his step-mother, not a broader class of beneficiaries").  Additionally, there is no indication the Goetz Defendants were motivated by resolving the question of

the *Yiatchos* Doctrine's application to ERISA or the QDRO
process.

In counterbalance to these three factors weighing
against an award of attorneys' fees, two factors weigh in favor
of a fee award.  Those two factors, however, are insufficient to
tip the scale in the Goetz Defendants' favor.  The first factor
is Dahl's apparent capacity to pay.  Dahl has worked in the
aerospace engineering field for thirty-five years and currently
holds a senior level position at Booz Allen Hamilton.  (*See*
Goetz Mem. in Supp. [Dkt. 24] ¶ 11.; AERP Mem. in Supp. [Dkt.
26] at 6 (referencing Goetz's memorandum).)  Additionally, Dahl
is the sole owner of a home assessed at $1.4 million and "is
believed to have significant retirement assets."  (Goetz Mem. in
Supp. ¶ 11; AERP Mem. in Supp. at 6.)  Dahl did not refute these
facts in her memoranda in opposition.  Despite this apparent
capacity to pay, Dahl would likely have more difficulty bearing
these fees than would a corporation or business entity.  *See*
*Quesinberry*, 987 F.2d at 1030 n.17 ("Consideration of the second
factor should be undertaken with due regard for the type of
payor and the nature of the ERISA claim.").  Therefore, this
factor weighs only slightly in favor of fees.  *Yarde v. Pan Am.*
*Life Ins.*, No. 94-1167, 1995 WL 539736, at *13 (4th Cir. Sept.
12, 1995) ("The fact that Pan American is capable of paying an
attorney's fee cannot, by itself, justify such an award.").

12

Lastly, the relative merits of the parties' claims weigh in favor of attorneys' fees. Dahl lost in her attempt to prove she presented a QDRO or that the *Yiatchos* Doctrine applies. "To award attorneys' fees largely on the basis of Defendants' stronger positions, however, would essentially turn the test into a 'prevailing party' analysis, and there is no such presumption in ERISA fee award determinations." *Matlock v. Pitney-Bowes, Inc.*, 811 F. Supp. 2d 1186, 1192 (M.D.N.C. 2011). Therefore, this factor does not carry significant weight in this case.

In conclusion, three factors weigh against attorneys' fees as compared to two factors weighing in favor. The substance of the factors weighing against a fee, however, is more important in this case than the quantity. The absence of bad faith, positive deterrent effect, or benefit to plan beneficiaries weigh heavily against an award of attorneys' fees. Therefore, the Court will not grant attorneys' fees for the Goetz Defendants.

2.    *Aerospace Employees' Retirement Plan*

Applying the *Quesinberry* factors to AERP is a closer question, but yields the same outcome; fees are not appropriate for AERP. Notably, the absence of bad faith or deterrent effect weighs against an award of attorneys' fees. The only factor to weigh differently for AERP than the Goetz Defendants is the

13

benefit to plan beneficiaries. The addition of that factor to the side favoring fees, however, does not lead the Court to find fees appropriate.

As with the Goetz Defendants, the absence of bad faith and the lack of a positive deterrent effect counsel against a fee award. It also bears repeating that a fee award in this case could deter good-faith plaintiffs from pursuing their only viable opportunity for relief, the federal courts. These factors weigh heavily against an award of attorneys' fees. The three factors on the other side of the scale are (1) the benefit to plan participants, (2) Dahl's capacity to pay, and (3) the relative strength of AERP's position on the merits. The Court will focus on the benefit to plan participants, as that is the only factor unique to AERP.

AERP argues that it was acting on behalf of plan participants in its defense of this suit because substituting beneficiaries would interfere with its planning and potentially threaten participants' access to benefits. Additionally, AERP argues that it could have been subject to suit if it acted contrary to plan or ERISA by providing Dahl with the relief she sought through her draft QDRO.

The Court finds this factor to weigh only slightly in favor of a fee award because there is no indication how burdensome a beneficiary change would be to the plan. Awarding

14

Dahl the relief she sought would substitute her one-hundred percent annuity payment for Mrs. Goetz's fifty-percent payment. AERP acknowledged it has the technical capacity to change beneficiaries, but lacked the legal authority to do so.  (AERP Mem. Reply to Mot. to Dismiss [Dkt. 19] at 10.)  It is questionable how much the plan participants as a whole benefit by preventing a beneficiary change in this case.

In conclusion, the three factors supporting an award of attorneys' fees for AERP are not compelling here.  By contrast, the absence of bad faith and the risk of deterring good-faith plaintiffs from seeking relief through the federal courts weigh strongly against a fee award.  Therefore, the Court will not award fees to AERP.

## IV. Conclusion

For the foregoing reasons, the Court will deny the Goetz Defendants and AERP's Motions for Attorneys' Fees.  An appropriate order will issue.


_____
                                        /s/
December 1, 2015                 James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE